JASON M. FRIERSON
United States Attorney
Nevada Bar No. 7709
DANIEL D. HOLLINGSWORTH
Assistant United States Attorney
Nevada Bar No. 1925
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Daniel.Hollingsworth@usdoj.gov
*Attorneys for the United States*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$1,317,828 IN UNITED STATES CURRENCY,<br><br>Defendant. | 2:22-CV-098-APG-EJY<br><br>**Verified Complaint for Forfeiture in Rem** |

The United States of America, in a civil cause for forfeiture, respectfully states as follows:

## SUBJECT MATTER JURISDICTION

1. This Court has jurisdiction under 19 U.S.C. §§ 1603, 1604, 1608, and 1610; Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. R.) C, E, and G; 18 U.S.C. § 983; 31 U.S.C. §§ 5317(c)(2); and 28 U.S.C. §§ 1345, 1355, and 1395 because (1) the United States of America commenced this civil in rem action; (2) the acts or omissions giving rise to this forfeiture occurred in this judicial district; (3) the forfeiture proceeding accrues in this judicial district; and (4) the above-named property was found in this judicial district.

## IN REM JURISDICTION

2. This Court will have in rem jurisdiction over the defendant if this Court signs an Order for Summons and Warrant of Arrest in Rem for the Property and the Clerk of the

Court issues a Summons and Warrant of Arrest in Rem for the Property, which will be executed upon the defendant and returned to the Court.

## VENUE

3. This Court has venue of this matter under 28 U.S.C. § 1395 and Fed. R. Civ. P. Supp. R. C(2)(c) and G(1) because (1) the forfeiture proceeding accrues in this judicial district; and (2)(a) the above-named property was found in this judicial district; and (b) was brought into this judicial district.

## PARTICULAR DESCRIPTION

4. The defendant is more particularly described as follows: US $1,317,828.

## PLACE OF SEIZURE

5. On September 26, 2021, Customs and Border Protection (CBP) Officers in Las Vegas, Nevada, seized the US $1,317,828 from the private flight N318LS from Hong Kong located in the private terminal at Harry Reid International Airport, 5757 Wayne Newton Boulevard, Las Vegas, Nevada 89119.

## CUSTODY OF ASSET

6. On September 26, 2021, the CBP obtained the care, custody, and control of the US $1,317,828 and continues to do so.

## TIMELY FILING

7. This complaint is timely filed.

## VALUE

8. The value of the defendant is US $1,317,828.

## FORFEITURE STATUTES

9. Based on the information below, the US $1,317,828 is subject to forfeiture to the United States of America under 31 U.S.C. §§ 5317(c)(2).

## FACTS

10. This civil forfeiture in rem action seeks to forfeit United States currency for violations of 31 U.S.C. §§ 5316(a)(1)(B) and 5324(c) under 31 U.S.C. § 5317(c)(2).

/ / /

11. On May 11, 1996, Cheng, Passport KJ0715039, a citizen of Hong Kong, flew inbound from the Guangzhou Baiyun International Airport, Guangzhou, China, to the United States.

12. On October 4, 1997, Cheng, Passport KJ0715039, flew inbound from the Taiwan Taoyuan International Airport, Taipei, Taiwan, to the United States.

13. On September 5, 2004, Cheng, Passport KJ0715039, flew inbound from the Taiwan Taoyuan International Airport, Taipei, Taiwan, to the Kansai International Airport, Osaka, Japan, to the Daniel K. Inouye International Airport, Honolulu, Hawaii, United States.

14. On September 10, 2004, Cheng, Passport KJ0715039, flew outbound from the Daniel K. Inouye International Airport, Honolulu, Hawaii, United States, to the Kansai International Airport, Osaka, Japan, to the Taiwan Taoyuan International Airport, Taipei, Taiwan.

15. As of January 20, 2017, the owner of the private aircraft with tail number N318LS, trustee Bank of Utah, has an Aircraft Operating Agreement with Lens International Limited with its operations in Hong Kong.

16. On September 22 and 23, 2019, Cheng, Passport KJ0715039, flew inbound from the Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, through a private airport designated as XXX, to the San Jose International Airport, San Jose, California, United States, via private flight tail number N318LS.

17. On September 27, 2019, Cheng, Passport KJ0715039, flew outbound from the San Francisco International Airport, San Francisco, California, United States, to the Ted Stevens Anchorage International Airport, Anchorage, Alaska, United States, through a private airport designated as XXX, to Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, via private flight tail number N318LS.

18. On January 22, 2020, Cheng, Passport KJ0715039, flew inbound from the Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, through a private

/ / /

3

airport designated as XXX, to the San Jose International Airport, San Jose, California, United States, via private flight tail number N318LS.

19. On January 28, 2020, Cheng, Passport KJ0715039, flew outbound from the San Jose International Airport, San Jose, California, United States, through a private airport designated as XXX, to the Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, via private flight tail number N318LS.

20. On February 2, 2020, Cheng, Passport KJ0715039, flew outbound from the San Jose International Airport, San Jose, California, United States, through a private airport designated as XXX, to the Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, via private flight tail number N318LS.

21. On September 26, 2021, Cheng, Passport KJ0715039, flew inbound from the Chonju aka Jeon Ju Airport, Jeonju, South Korea, through a private airport designated as XXX, to the McCarran International Airport (Harry Reid International Airport), Las Vegas, Nevada, United States, via private flight tail number N318LS.

22. Cheng has flown into or out of multiple United States airports. CBP signage and public announcements regarding the transportation of currency and smuggling are in the San Jose International Airport, San Jose, California, United States; Daniel K. Inouye International Airport, Honolulu, Hawaii, United States; San Francisco International Airport, San Francisco, California, United States; Ted Stevens Anchorage International Airport, Anchorage, Alaska, United States; and the McCarran International Airport (Harry Reid International Airport), Las Vegas, Nevada, United States.

23. On September 26, 2021, at approximately 9:24 am, Cheng, Passport KJ0715039, applied for admission at the Harry Reid International Airport, Las Vegas, Nevada, United States, private terminal via private flight tail number N318LS from Hong Kong, China.

24. A Customs and Border Protection Officer (CBPO) and a CBP Agriculture Specialist (CBPAS) met Cheng inside his plane.

25. Cheng's crew member Lee, Sheung Ying, Passport KJ0464519, offered to translate, and the CBPO made sure both Cheng and Lee were comfortable with translating

before proceeding with any questions. The CBPO wanted to ensure Cheng understood what was being asked. Both Lee and Cheng agreed Lee would translate English to Chinese and from Chinese to English. Lee translated without hesitation or delay. Cheng acknowledged he understood what was being translated by his staff member Lee.

26. The CBPO asked Cheng if he had over US $10,000. Cheng declared he did not have any currency and any form of monetary instruments over US $10,000. Cheng's crew staff member Lee, who was in the main cabin of the aircraft with Cheng, translated the information.

27. The CBPO asked a second time if Cheng was bringing anything into the United States to include currency or any form of monetary instruments over US $10,000 that he would like to declare because undeclared items and currency can be seized in accordance with CBP laws and regulations.

28. Cheng stalled and again stated he did not bring more than US $10,000 into the United States. Cheng declared he brought US $7,000. Cheng pulled the currency from his black handbag he was personally carrying and showed currency for the CBPO and the CBPAS to see.

29. After this, the CBPO instructed Cheng and his crew staff members Lee; Wong, Siu Ying; Brooks, Collin William; and Phipps, Colin Graham to continue the arrival process inside the CBP facility. The CBPO and the CBPAS continued to inspect the rest of the aircraft and asked one of the pilots to stay behind while the aircraft inspection was completed.

30. During the aircraft inspection, the CBPO noticed a few personal carry-on bags were in the main cabin except a black carry-on bag that was alone in the sleeping area in the back part of the plane between the bed that was pulled out and the wall that separates the restroom. The black carry-on bag was not visible when the CBPO first entered the plane, and he did not see it until he approached the back of plane.

/ / /

/ / /

31. During the aircraft inspection, the CBPO moved the black carry-on bag that was in the back of the plane to the aisle area so it could be more visible. The CBPO noticed the black carry-on bag was heavier than normal for this size luggage.

32. The CBPO proceeded to the CBP facility to conduct a secondary inspection. Cheng properly filled out a CBP Customs Declaration form 6059B. Question 13 on the form asks Cheng to declare currency or monetary instruments over the amount of US $10,000 or foreign equivalent and informs the traveler that there is further guidance and explanation as to the definition of monetary instruments on the back of the form.

33. Cheng reviewed the back of form 6059B, filled it out, signed it, and submitted it to the CBPO.

34. The CBPO gave Cheng a CBP form 0503 (the currency reporting advisement in English). Lee also translated and explained form 0503 to ensure Cheng fully understood what Cheng would acknowledge and sign. Cheng signed the CBP form 0503, declaring he only brought US $7,000 into the United States.

35. The CBPO searched for, and found, a CBP form 0503 in Cheng's Chinese language to ensure further understanding. The CBPO provided the CBP form 0503 in simple Chinese to Cheng. Cheng again stated he was only bringing US $7,000 U.S. Currency and signed CBP form 0503 in Chinese. The CBPO advised Cheng that the CBPO would verify his currency and inspect the luggage located inside the aircraft.

36. After verifying the amount Cheng was carrying in his black handbag was US $7,600 plus some Chinese currency, the CBPO asked the pilots Phipps and Brooks to accompany the CBPAS to bring the luggage off the aircraft for inspection.

37. The CBPO noticed they brought all the bags except for the black carry-on bag that was previously in the sleeping area of the aircraft. Before proceeding, the CBPO asked who the owner of the black carry-on bag was. Cheng claimed ownership of the black carry-on bag. The CBPO asked why it was left on the plane and received no answer.

/ / /

/ / /

6

38. In Cheng's black carry-on bag that was left on the aircraft between the bed and wall that separates the restroom, a white Dior box contained US $260,000. Cheng claimed the US $260,000 was baby shower gifts he received for his unborn child.

39. The CBPO asked Cheng if he knew undeclared currency was in the black carry-on bag. Cheng admitted he owned the US $260,000, knew the currency was in the black carry-on bag, and knew US $260,000 was not gifts for his unborn child.

40. The CBPO requested the rest of the bags located in the cargo hold of the aircraft. During the inspection the rest of the bags, a Dolce & Gabbana box was found inside a red suitcase containing US $1,000,000. The currency was wrapped and sealed with serial numbers from the Federal Reserve offices in New York and Atlanta. Eight of these bundles were from the New York Federal Reserve, and two bundles were from the Atlanta Federal Reserve. An extra US $50,000 was loose inside the same box.

41. The bulk of the currency was produced at the Western Currency Facility in Dallas, Texas, and shipped to the East Rutherford Operations Center in New Jersey.

42. The CBPO asked Cheng why he did not declare the currency when he was given so many opportunities. Cheng admitted he knew the reporting rules but did not report it.

43. Before transporting back to the main terminal, the CBPO advised the crew they were free to go to the hotel.

44. The CBPO requested Cheng stay with law enforcement personnel until the CBPs processed the currency and for further questioning. Crew member Lee volunteered to stay with Cheng to continue to translate for him.

45. During the remainder of the time at the Harry Reid International Airport private terminal facility, a CBP supervisor and a team of CBP officers came to assist with the pat down of Cheng, crew member Lee, and Wong, the nanny. CBPO Sina Monnarez and CBPO Jenny Gian, two female officers, conducted the two female pat downs. The CBPO patted down Cheng with CBPO David Spreder as a witness. These officers also helped with the transport of the subjects from the private terminal to CBP's main facility located at

/ / /

Harry Reid International Airport terminal 3 and the undeclared currency for privacy purposes.

46. Homeland Security Investigations (HSI) interviewed Cheng using Lee as a translator. Prior to asking any questions, HSI Special Agent Kret provided Cheng with his Miranda rights.

47. Cheng stated the purpose of his visit was for the imminent birth of a baby at Centennial Hills Hospital in Las Vegas, Nevada. Once the baby was born, Cheng planned to spend two months in San Jose, California, to take care of the baby. After the two-month, Cheng planned to take the child back to Hong Kong.

48. Cheng declared he brought the currency to gamble in Las Vegas. Cheng used currency instead of a wire transfer to conceal the gambling from his wife and packed it into the boxes himself. Cheng claimed he did not have credit cards. However, HSI agents found Cheng had numerous credit cards in his possession.

49. Cheng stated he would stay and play at the Wynn and later stated at the Venetian.

50. Cheng did not have reservations at either hotel.

51. Cheng admitted he withdrew the currency in small increments US $50,000 to US $100,000 from a bank over time and withdrew US $1,000,000 at one time in September 2021. Cheng stated the withdrawals were from the Bank of Communications in Hong Kong. He packed the currency in the boxes himself.

52. Cheng tried to hide he brought US $1,317,828 into the United States; misrepresented the facts during the inspection, on CBP forms, and baggage inspections; misrepresented the currency was gifts for a child; and admitted he knew and understood the reporting requirements but decided he did not want to report the cash.

53. Cheng did not report the export of the US $1,317,828 to Hong Kong. Any amount over HK $120,000, which is equivalent to US $15,287.44, as of June 15, 2022, triggers the reporting requirements in Hong Kong.

/ / /

54. On September 26, 2021, HSI SAs interviewed the flight's pilots. The pilots indicated the aircraft belonged to Cheng's company, Lens Technologies.

55. The pilots had Cheng scheduled to leave Las Vegas, Nevada, for San Jose, California, on September 27, 2021.

56. The CBPO seized the US $1,317,828 for bulk cash smuggling and failure to report the currency. The denominations were as follows:

   a. $1,317,600 in $100 bills (13,176 bills);
   b. $160 in $20 bills (8 bills);
   c. $40 in $10 bills (4 bills);
   d. $15 in $5 bills (3 bills); and
   e. $13 in $1 bills (13 bills).

## CAUSE OF ACTION

57. The United States realleges, readopts, and reincorporates all the allegations contained in paragraphs 1 through 56 as though fully set forth herein.

58. The US $1,317,828 is any property involved in a violation of 31 U.S.C. § 5316(a)(1)(B) and 31 U.S.C. § 5324(c), or any conspiracy to commit such violation, and any property traceable to any such violation or conspiracy and is subject to forfeiture under 31 U.S.C. § 5317(c)(2).

## CONCLUSION

59. Because of the foregoing, the defendant is subject to forfeiture and has become and is forfeited to the United States of America under 31 U.S.C. §§ 5317(c)(2).

WHEREFORE, the United States of America, Plaintiff, prays as follows:

1. Due process issue to enforce the forfeiture of the defendant;
2. Due notice be given to any interested party to appear and to show cause why the forfeiture should not be decreed.

/ / /

/ / /

/ / /

3. The defendant be condemned and be forfeited to the United States; and

4. This Court enter other and further relief as it deems just and proper.

Dated: April 19, 2023.

                              Respectfully submitted,

                              JASON M. FRIERSON
                              United States Attorney

                              */s/ Daniel D. Hollingsworth*
                              DANIEL D. HOLLINGSWORTH
                              Assistant United States Attorney

**VERIFICATION**

I, Lukasz J. Kret, am Special Agent, HSI Las Vegas BEST-Airport Group. I have read the contents of the foregoing complaint. I declare and verify under penalty of perjury that the foregoing is true and correct under 28 U.S.C. § 1746(2).

Executed on _____.

LUKASZ J KRET
Digitally signed by LUKASZ J KRET
Date: 2023.04.19 12:23:32 -07'00'

_____
Lukasz J. Kret, Special Agent,
Homeland Security Investigations,
Las Vegas BEST-Airport Group