1
2
3
4

**UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA**

5

| | |
|---|---|
| UNITED STATES OF AMERICA, | 2:22-CV-098-APG-EJY |
| Plaintiff, | **Default Judgment of Forfeiture and Final Judgment of Forfeiture** |
| v. | |
| $1,317,828 IN UNITED STATES CURRENCY, | |
| Defendant. | |

6
7
8
9
10
11

12  **I. FACTS**

13      On May 11, 1996, Chun Lung Cheng (Cheng), Passport KJ0715039, a citizen of

14  Hong Kong, flew inbound from the Guangzhou Baiyun International Airport, Guangzhou,

15  China, to the United States.

16      On October 4, 1997, Cheng, Passport KJ0715039, flew inbound from the Taiwan

17  Taoyuan International Airport, Taipei, Taiwan, to the United States.

18      On September 5, 2004, Cheng, Passport KJ0715039, flew inbound from the Taiwan

19  Taoyuan International Airport, Taipei, Taiwan, to the Kansai International Airport,

20  Osaka, Japan, to the Daniel K. Inouye International Airport, Honolulu, Hawaii, United

21  States.

22      On September 10, 2004, Cheng, Passport KJ0715039, flew outbound from the

23  Daniel K. Inouye International Airport, Honolulu, Hawaii, United States, to the Kansai

24  International Airport, Osaka, Japan, to the Taiwan Taoyuan International Airport, Taipei,

25  Taiwan.

26      As of January 20, 2017, the owner of the private aircraft with tail number N318LS,

27  trustee Bank of Utah, has an Aircraft Operating Agreement with Lens International

28  Limited with its operations in Hong Kong.

On September 22 and 23, 2019, Cheng, Passport KJ0715039, flew inbound from the Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, through a private airport designated as XXX, to the San Jose International Airport, San Jose, California, United States, via private flight tail number N318LS.

On September 27, 2019, Cheng, Passport KJ0715039, flew outbound from the San Francisco International Airport, San Francisco, California, United States, to the Ted Stevens Anchorage International Airport, Anchorage, Alaska, United States, through a private airport designated as XXX, to Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, via private flight tail number N318LS.

On January 22, 2020, Cheng, Passport KJ0715039, flew inbound from the Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, through a private airport designated as XXX, to the San Jose International Airport, San Jose, California, United States, via private flight tail number N318LS.

On January 28, 2020, Cheng, Passport KJ0715039, flew outbound from the San Jose International Airport, San Jose, California, United States, through a private airport designated as XXX, to the Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, via private flight tail number N318LS.

On February 2, 2020, Cheng, Passport KJ0715039, flew outbound from the San Jose International Airport, San Jose, California, United States, through a private airport designated as XXX, to the Hong Kong aka Chek Lap Kok International Airport, Hong Kong, China, via private flight tail number N318LS.

On September 26, 2021, Cheng, Passport KJ0715039, flew inbound from the Chonju aka Jeon Ju Airport, Jeonju, South Korea, through a private airport designated as XXX, to the McCarran International Airport (Harry Reid International Airport), Las Vegas, Nevada, United States, via private flight tail number N318LS.

Cheng has flown into or out of multiple United States airports. CBP signage and public announcements regarding the transportation of currency and smuggling are in the San Jose International Airport, San Jose, California, United States; Daniel K. Inouye

International Airport, Honolulu, Hawaii, United States; San Francisco International Airport, San Francisco, California, United States; Ted Stevens Anchorage International Airport, Anchorage, Alaska, United States; and the McCarran International Airport (Harry Reid International Airport), Las Vegas, Nevada, United States.

On September 26, 2021, at approximately 9:24 am, Cheng, Passport KJ0715039, applied for admission at the Harry Reid International Airport, Las Vegas, Nevada, United States, private terminal via private flight tail number N318LS from Hong Kong, China.

A Customs and Border Protection Officer (CBPO) and a CBP Agriculture Specialist (CBPAS) met Cheng inside his plane.

Cheng's crew member Lee, Sheung Ying, Passport KJ0464519, offered to translate, and the CBPO made sure both Cheng and Lee were comfortable with translating before proceeding with any questions. The CBPO wanted to ensure Cheng understood what was being asked. Both Lee and Cheng agreed Lee would translate English to Chinese and from Chinese to English. Lee translated without hesitation or delay. Cheng acknowledged he understood what was being translated by his staff member Lee.

The CBPO asked Cheng if he had over US $10,000. Cheng declared he did not have any currency and any form of monetary instruments over US $10,000. Cheng's crew staff member Lee, who was in the main cabin of the aircraft with Cheng, translated the information.

The CBPO asked a second time if Cheng was bringing anything into the United States to include currency or any form of monetary instruments over US $10,000 that he would like to declare because undeclared items and currency can be seized in accordance with CBP laws and regulations.

Cheng stalled and again stated he did not bring more than US $10,000 into the United States. Cheng declared he brought US $7,000. Cheng pulled the currency from his black handbag he was personally carrying and showed currency for the CBPO and the CBPAS to see.

/ / /

3

After this, the CBPO instructed Cheng and his crew staff members Lee; Wong, Siu Ying; Brooks, Collin William; and Phipps, Colin Graham to continue the arrival process inside the CBP facility. The CBPO and the CBPAS continued to inspect the rest of the aircraft and asked one of the pilots to stay behind while the aircraft inspection was completed.

During the aircraft inspection, the CBPO noticed a few personal carry-on bags were in the main cabin except a black carry-on bag that was alone in the sleeping area in the back part of the plane between the bed that was pulled out and the wall that separates the restroom. The black carry-on bag was not visible when the CBPO first entered the plane, and he did not see it until he approached the back of plane.

During the aircraft inspection, the CBPO moved the black carry-on bag that was in the back of the plane to the aisle area so it could be more visible. The CBPO noticed the black carry-on bag was heavier than normal for this size luggage.

The CBPO proceeded to the CBP facility to conduct a secondary inspection. Cheng properly filled out a CBP Customs Declaration form 6059B. Question 13 on the form asks Cheng to declare currency or monetary instruments over the amount of US $10,000 or foreign equivalent and informs the traveler that there is further guidance and explanation as to the definition of monetary instruments on the back of the form.

Cheng reviewed the back of form 6059B, filled it out, signed it, and submitted it to the CBPO.

The CBPO gave Cheng a CBP form 0503 (the currency reporting advisement in English). Lee also translated and explained form 0503 to ensure Cheng fully understood what Cheng would acknowledge and sign. Cheng signed the CBP form 0503, declaring he only brought US $7,000 into the United States.

The CBPO searched for, and found, a CBP form 0503 in Cheng's Chinese language to ensure further understanding. The CBPO provided the CBP form 0503 in simple Chinese to Cheng. Cheng again stated he was only bringing US $7,000 U.S. Currency and

/ / /

signed CBP form 0503 in Chinese. The CBPO advised Cheng that the CBPO would verify his currency and inspect the luggage located inside the aircraft.

After verifying the amount Cheng was carrying in his black handbag was US $7,600 plus some Chinese currency, the CBPO asked the pilots Phipps and Brooks to accompany the CBPAS to bring the luggage off the aircraft for inspection.

The CBPO noticed they brought all the bags except for the black carry-on bag that was previously in the sleeping area of the aircraft. Before proceeding, the CBPO asked who the owner of the black carry-on bag was. Cheng claimed ownership of the black carry-on bag. The CBPO asked why it was left on the plane and received no answer.

In Cheng's black carry-on bag that was left on the aircraft between the bed and wall that separates the restroom, a white Dior box contained US $260,000. Cheng claimed the US $260,000 was baby shower gifts he received for his unborn child.

The CBPO asked Cheng if he knew undeclared currency was in the black carry-on bag. Cheng admitted he owned the US $260,000, knew the currency was in the black carry-on bag, and knew US $260,000 was not gifts for his unborn child.

The CBPO requested the rest of the bags located in the cargo hold of the aircraft. During the inspection the rest of the bags, a Dolce & Gabbana box was found inside a red suitcase containing US $1,000,000. The currency was wrapped and sealed with serial numbers from the Federal Reserve offices in New York and Atlanta. Eight of these bundles were from the New York Federal Reserve, and two bundles were from the Atlanta Federal Reserve. An extra US $50,000 was loose inside the same box.

The bulk of the currency was produced at the Western Currency Facility in Dallas, Texas, and shipped to the East Rutherford Operations Center in New Jersey.

The CBPO asked Cheng why he did not declare the currency when he was given so many opportunities. Cheng admitted he knew the reporting rules but did not report it.

Before transporting back to the main terminal, the CBPO advised the crew they were free to go to the hotel.

/ / /

5

The CBPO requested Cheng stay with law enforcement personnel until the CBPs processed the currency and for further questioning. Crew member Lee volunteered to stay with Cheng to continue to translate for him.

During the remainder of the time at the Harry Reid International Airport private terminal facility, a CBP supervisor and a team of CBP officers came to assist with the pat down of Cheng, crew member Lee, and Wong, the nanny. CBPO Sina Monnarez and CBPO Jenny Gian, two female officers, conducted the two female pat downs. The CBPO patted down Cheng with CBPO David Spreder as a witness. These officers also helped with the transport of the subjects from the private terminal to CBP's main facility located at Harry Reid International Airport terminal 3 and the undeclared currency for privacy purposes.

Homeland Security Investigations (HSI) interviewed Cheng using Lee as a translator. Prior to asking any questions, HSI Special Agent Kret provided Cheng with his Miranda rights.

Cheng stated the purpose of his visit was for the imminent birth of a baby at Centennial Hills Hospital in Las Vegas, Nevada. Once the baby was born, Cheng planned to spend two months in San Jose, California, to take care of the baby. After the two months, Cheng planned to take the child back to Hong Kong.

Cheng declared he brought the currency to gamble in Las Vegas. Cheng used currency instead of a wire transfer to conceal the gambling from his wife and packed it into the boxes himself. Cheng claimed he did not have credit cards. However, HSI agents found Cheng had numerous credit cards in his possession.

Cheng stated he would stay and play at the Wynn and later stated at the Venetian. Cheng did not have reservations at either hotel.

Cheng admitted he withdrew the currency in small increments US $50,000 to US $100,000 from a bank over time and withdrew US $1,000,000 at one time in September 2021. Cheng stated the withdrawals were from the Bank of Communications in Hong Kong. He packed the currency in the boxes himself.

6

Cheng tried to hide he brought US $1,317,828 into the United States; misrepresented the facts during the inspection, on CBP forms, and baggage inspections; misrepresented the currency was gifts for a child; and admitted he knew and understood the reporting requirements but decided he did not want to report the cash.

Cheng did not report the export of the US $1,317,828 to Hong Kong. Any amount over HK $120,000, which is equivalent to US $15,287.44, as of June 15, 2022, triggers the reporting requirements in Hong Kong.

On September 26, 2021, HSI SAs interviewed the flight's pilots. The pilots indicated the aircraft belonged to Cheng's company, Lens Technologies.

The pilots had Cheng scheduled to leave Las Vegas, Nevada, for San Jose, California, on September 27, 2021.

The CBPO seized the US $1,317,828 for bulk cash smuggling and failure to report the currency. The denominations were as follows:

      a.  $1,317,600 in $100 bills (13,176 bills);

      b.  $160 in $20 bills (8 bills);

      c.  $40 in $10 bills (4 bills);

      d.  $15 in $5 bills (3 bills); and

      e.  $13 in $1 bills (13 bills).

## II. PROCEDURE

On April 19, 2023, the United States filed a verified Complaint for Forfeiture in Rem, ECF No. 14, alleging the $1,317,828 in United States Currency (defendant property) is any property involved in a violation of 31 U.S.C. § 5316(a)(1)(B) and 31 U.S.C. § 5324(c), or any conspiracy to commit such violation, and any property traceable to any such violation or conspiracy and is subject to forfeiture under 31 U.S.C. § 5317(c)(2).

On April 27, 2023, the Court entered an Order for Summons and Warrant of Arrest in Rem for the Property and Notice, ECF No. 17, and the Clerk issued the Summons and Warrant of Arrest in Rem, ECF No. 17.

/ / /

Under the Order, ECF No. 17, the following documents were served on the defendant property and all persons or entities who may claim an interest in the defendant property: the Complaint, ECF No. 14; the Order, ECF No. 17; the Summons and Warrant, ECF No. 17; and the Notice of Complaint for Forfeiture. Notice was published according to law.

Under Supplemental Rule for Admiralty or Maritime Claims and Asset Forfeiture Actions (Fed. R. Civ. P. Supp. Rule) G(5), all persons or entities interested in the defendant property were required to: (1) file a verified claim, setting forth the person's or its interest in the property, that (a) identified the specific property claimed, (b) identified the claimant and stated the claimant's interest in the property, and (c) was signed by the claimant under penalty of perjury pursuant to 28 U.S.C. § 1746; (2) file the verified claim with the Clerk of the above-entitled Court no later than 35 days after the notice was sent or, if direct notice was not sent, no later than 60 days after the first day of publication on the official internet government forfeiture site, www.forfeiture.gov, whichever is earlier; (3) file an answer to the Complaint for Forfeiture in Rem or a motion under Rule 12 with the Clerk of the Court, Lloyd D. George United States Courthouse, 333 Las Vegas Boulevard South, Las Vegas, NV 89101, no later than 21 days after filing the verified claim; and (4) serve a copy of the verified claim and the answer at the time of each filing on Daniel D. Hollingsworth, Assistant United States Attorney, 501 Las Vegas Boulevard South, Suite 1100, Las Vegas, Nevada 89101. Complaint, ECF No. 14; Order for Summons and Warrant, ECF No. 17; Summons and Warrant, ECF No. 17.

On May 4, 2023, the United States Department of Homeland Security Investigations served the Complaint, the Order for Summons and Warrant of Arrest in Rem for the Property and Notice, the Summons and Warrant of Arrest in Rem for the Property, and the Notice of Complaint for Forfeiture and Arrest by executing them on the defendant property. Notice of Filing Take into Custody, ECF No. 18.

/ / /

/ / /

Public notice of the forfeiture action and arrest was given to all persons and entities by publication via the official internet government forfeiture site, www.forfeiture.gov, from May 3, 2023, through June 1, 2023. Notice of Filing Proof of Publication, ECF No. 19.

On June 8, 2023, the United States filed a Stipulation for Entry of Judgment of Forfeiture as to Chun Lung Cheng and Order, regarding the $1,317,828. Claimant waived, among other things, service of process. Stipulation as to Chun Lung Cheng, ECF No. 20.

On June 8, 2023, the United States filed a Stipulation for Entry of Judgment of Forfeiture as to Kwanfei Chau, Chun Lung Cheng's Wife, and Order, regarding the $1,317,828. Claimant waived, among other things, service of process. Stipulation as to Kwanfei Chau, ECF No. 21.

On June 13, 2023, the Court entered the Order Granting the Stipulation for Entry of Judgment of Forfeiture as to Chun Lung Cheng. Order Granting Stipulation as to Chun Lung Cheng, ECF No. 22.

On June 13, 2023, the Court entered the Order Granting the Stipulation for Entry of Judgment of Forfeiture as to Kwanfei Chau, Chun Lung Cheng's Wife. Order Granting Stipulation as to Kwanfei Chau, ECF No. 23.

No person or entity has filed a claim, answer, or responsive pleading within the time permitted by 18 U.S.C. § 983(a)(4) and Fed. R. Civ. P. Supp. Rule G(4) and (5).

On July 5, 2023, the United States filed a Motion for Entry of Clerk's Default against the $1,317,828 and all persons or entities who may claim an interest in the defendant property in the above-entitled action except for Chun Lung Cheng and Kwanfei Chau. Motion for Entry of Clerk's Default, ECF No. 24.

On July 6, 2023, the Clerk of the Court entered a Default against the $1,317,828 and all persons or entities who may claim an interest in the defendant property in the above-entitled action except for Chun Lung Cheng and Kwanfei Chau. Entry of Clerk's Default, ECF No. 25.

Chun Lung Cheng is neither a minor nor an incompetent person.

Kwanfei Chau is neither a minor nor an incompetent person.

## III. THE REQUIREMENTS FOR DEFAULT WERE MET.

### A. Legal Standard

Civil forfeiture cases have five requirements that must be fulfilled to complete a default: (1) the judgment sought does not differ in kind from, or exceed in amount, what is demanded in the pleadings under Fed. R. Civ. P. 54(c); (2) the Clerk of the Court has entered default for a sum certain under Fed. R. Civ. P. 55(b)(1); (3) publication and personal service were completed under Fed. R. Civ. P. Supp. Rule G(4); (4) the Complaint is legally sufficient to support a reasonable belief that the government will be able to meet its burden of proof under Fed. R. Civ. P. Supp. Rule G(2), *Alan Neuman Prods., Inc. v. Albright,* 862 F.2d 1388, 1392 (9th Cir. 1988); and (5) no person has filed a claim, or the claim(s) have been resolved under 18 U.S.C. § 983(a)(4)(A) or Supp. R. G(5).

Civil cases that do not directly address forfeiture have seven factors that the Court must consider before entry of default: (1) the substantive merit of the plaintiff's claims; (2) the sufficiency of the complaint; (3) the amount of money at stake; (4) the possibility of prejudice to the plaintiff if relief is denied; (5) the possibility of disputes to any material facts in the case; (6) whether default resulted from excusable neglect; and (7) the public policy favoring resolution of cases on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

For purposes of a default judgment, the well-pled allegations of a complaint are taken as true. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 918 (9th Cir. 1987). Furthermore, upon default, the defendant's liability is conclusively established and the factual allegations in the complaint, except those relating to damages, are accepted as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). The power to grant or deny relief upon an application for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

/ / /

/ / /

/ / /

**B. The Forfeiture Requirements for Default Were Met.**

### a. Judgment Sought

Under Fed. R. Civ. P. 54(c) and 55(b), the judgment by default does not "differ in kind from, or exceed [the] amount" of, relief listed in the Complaint for forfeiture.

### b. Default and Entry of Default

As shown above, the United States requested entry of Clerk's Default against the $1,317,828 and all persons or entities who may claim an interest in the defendant property in the above-entitled action except for Chun Lung Cheng and Kwanfei Chau, ECF No. 24. The Clerk entered the Default as requested, ECF No. 25.

### c. Notice

Under Fed. R. Civ. P. Supp. Rule G(4)(a)(iv)(C), the United States published notice via the official internet government forfeiture site, www.forfeiture.gov, for thirty consecutive days, ECF No. 19. Under Fed. R. Civ. P. Supp. Rule G(4)(b)(v), all known potential claimants had actual knowledge of the forfeiture action and signed Stipulations for Entry of Judgment of Forfeiture, ECF Nos. 22, 23. The Stipulations waived the service requirements of Fed. R. Civ. P. Supp. Rule G.

### d. Legal Sufficiency of the Complaint

The Complaint filed in this action was verified. The Court has subject matter jurisdiction, in rem jurisdiction over the defendant property, and venue. The Complaint described the defendant property with reasonable particularity. The Complaint stated where the seizure of the defendant property occurred and its current location. The Complaint identified the statute under which the forfeiture action has been brought. The Complaint alleged sufficiently detailed facts to support a reasonable belief that the United States would be able to meet its burden of proof at trial. Fed. R. Civ. P. Supp. Rule G(2); ECF No. 14.

### e. Status of Potential Claimants

Chun Lung Cheng and Kwanfei Chau signed Stipulations for Entry of Judgment of Forfeiture.

No person or entity has filed a claim, and the time to file a claim has passed.

**C. The Civil Requirements for Default Were Met.**

    a. <u>The Plaintiff Would be Prejudiced Without a Judgment</u>

The government would be prejudiced if it were to try this case rather than obtain a default judgment, since a trial would require the additional expenditure of human and financial resources. These expenses and efforts are unnecessary because the Complaint established sufficient evidence of the status and forfeitability of the defendant property, and that evidence is uncontested by Chun Lung Cheng and Kwanfei Chau. *United States v. $150,990.00 in U.S. Currency*, No. 2-12-CV-01014-JAD, 2014 WL 6065815, 2 (D. Nev. Nov. 10, 2014) (brackets added) ("[T]he government would be prejudiced by having to expend additional resources litigating an action that appears to be uncontested. This factor favors default judgment.")

    b. & c. <u>The Plaintiff's Claims are Meritorious and the Complaint is Sufficient.</u>

As shown in the statement of the case above, the government has a bona fide case against the defendant property and the Complaint sufficiently alleges the facts of the case.

    d. <u>The Amount of Money at Stake</u>

The value of the defendant property was clearly established in the Complaint, ECF No. 14, and the defendant property is forfeitable under 31 U.S.C. § 5317(c)(2). "Under the fourth *Eitel* factor, the Court must balance 'the amount of money at stake in relation to the seriousness of Defendant's conduct.' This requires that the Court assess whether the recovery sought is proportional to the harm caused by the defendant's conduct." *Nolan v. Calello*, No. 2:21-CV-00981-AB-RAO, 2021 WL 4621945, 3 (C.D. Cal. July 8, 2021) (citations omitted).

The Complaint alleges the serious crime of failing to report monetary instruments of over $10,000 imported or exported into or from the United States. The money at stake is the tainted currency, and the forfeiture is a portion of the tainted currency.

*/ / /*

12

e.   There Are No Possible Disputes of Material Fact

No issues of material fact exist, and the allegations of the Complaint are established as a matter of law. The defendant property is subject to forfeiture because law enforcement can demonstrate that the defendant property is any property involved in a violation of 31 U.S.C. § 5316(a)(1)(B) and 31 U.S.C. § 5324(c), or any conspiracy to commit such violation, and any property traceable to any such violation or conspiracy.

f.   Default Was Not the Result of Excusable Neglect

The record shows that the known potential claimants signed Stipulations for Entry of Default Judgment that waived service of process and agreed not to file a claim or answer. No other parties have filed a claim. There is no evidence of excusable neglect.

g.   Public Policy Does Not Prevent Default Judgment

Under Fed. R. Civ. P. 55(b), default judgments are allowed. Here, the potential claimants did not file a claim and an answer to the government's Complaint.

> While the Federal Rules do favor decisions on the merits, they also frequently permit termination of cases before the court reaches the merits. As F.R.C.P. 55 indicates, one such instance is when a party fails to defend against an action, which is exactly what [claimant(s)] failed to do in this case. Thus, the preference to decide cases on the merits does not preclude a court from granting default judgment.

*Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, 3 (N.D. Cal. Feb. 13, 1996). Denying the government's Motion would not further public policy. While cases should be decided on the merits when possible, the potential claimants have not contested the facts of the Complaint or the forfeiture of the defendant property, which makes a decision on the merits impractical. Therefore, a final default judgment of forfeiture is appropriate. *See Covenant Care California, LLC v. Shirk*, No. 2:17-CV-00956-JAD-VCF, 2018 WL 3429669, 2 (D. Nev. July 16, 2018).

**IV. JUDGEMENT**

Based on the foregoing this Court finds that the United States has shown its entitlement to a Default Judgment of Forfeiture as to all persons or entities who may claim an interest in the $1,317,828 except for Chun Lung Cheng and Kwanfei Chau and a Final

Judgment of Forfeiture as to Chun Lung Cheng, Kwanfei Chau, and $370,500 of the $1,317,828.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Default Judgment of Forfeiture is entered against all persons or entities who may claim an interest in the $1,317,828 in the above-entitled action except for Chun Lung Cheng and Kwanfei Chau.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Final Judgment of Forfeiture is entered against Chun Lung Cheng, Kwanfei Chau, and $370,500 of the $1,317,828.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that $370,500 of the $1,317,828 be, and the same is hereby forfeited to the United States of America, and no possessory rights, ownership rights, and no rights, titles, or interests in the property shall exist in any other party.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED, that Chun Lung Cheng and Kwanfei Chau forfeited all possessory rights, ownership rights, and all rights, titles, or interests in $370,500 of the $1,317,828 to the United States and the remainder of the $1,317,828 will be returned to Chun Lung Cheng and Kwanfei Chau in accordance with the Stipulations.

IT IS HEREBY CERTIFIED, under 28 U.S.C. § 2465(a)(2), that there was reasonable cause for the seizure or arrest of the defendant property.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

DATED:___July 24, 2023_____